UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

TWENTIETH CENTURY FOX FILM CORPORATION,   :
VIACOM INTERNATIONAL INC., COMEDY          :
PARTNERS, DISNEY ENTERPRISES, INC.,        :
PARAMOUNT PICTURES CORPORATION, AND        :
WARNER BROS. ENTERTAINMENT INC.            :        Civil Action No. 12-CV-0818 (HB)
                                           :
                        Plaintiffs,        :
           v.                              :
                                           :
LIMEWIRE LLC; LIME GROUP LLC; and MARK     :
GORTON                                     :
                        Defendants.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Richard J. Holwell
Michael S. Shuster
Avi Israeli
HOLWELL SHUSTER
& GOLDBERG LLP
335 Madison Avenue, 9th Floor
New York, NY 10017
Phone: (646) 837-5151

*Attorneys for Defendants*

November 12, 2012

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ...................................................................................................................... 3

    A.  LimeWire and the *Arista Case* ................................................................................. 3

    B.  Defendants' Conduct and Intent in the Limitations Period, Which Was
        Not Before the Court or Considered in *Arista* ........................................................ 6

ARGUMENT ........................................................................................................................... 9

I.   LEGAL STANDARDS ..................................................................................................... 9

    A.  Summary Judgment .................................................................................................. 9

    B.  Inducement of Copyright Infringement ................................................................ 10

II.  DEFENDANTS ARE NOT COLLATERALLY ESTOPPED FROM LITIGATING
     WHETHER THEY INDUCED COPYRIGHT INFRINGEMENT IN 2009-2010 .............. 11

    A.  Genuine Issues of Material Fact, Not Resolved By The *Arista* Court
        Preclude Summary Judgment ................................................................................. 11

        1.  Under the Copyright Law, the Relevant Period is February 2, 2009
            Through October 26, 2010 .............................................................................. 11

        2.  The *Arista* Court Only Considered Defendants' Conduct and Intent Prior to the
            2009-2010 Limitations Period and Based Its Decision Solely on Such Evidence.... 12

        3.  Defendants Should Not be Collaterally Estopped From Defending
            Against Plaintiffs' Claims in This Action ...................................................... 13

    B.  Genuine Issues of Material Fact Exist As To Whether Defendants
        Intended Encourage Infringement of Video Files ................................................. 18

    C.  Plaintiffs Should Not Be Permitted to Offensively Invoke Collateral Estoppel
        Because They Had Every Opportunity to Join in the *Arista* Litigation, But Chose
        Not to Do So .......................................................................................................... 20

III.  GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER LIMEWIRE
      USERS DIRECTLY INFRINGED UPON PLAINTIFFS' WORKS ................................... 21

IV.  PRINCIPLES OF STARE DECISIS DO NOT SUPPORT SUMMARY
      JUDGMENT ................................................................................................................... 23

CONCLUSION ...................................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*423 S. Salina St., Inc. v. City of Syracuse,*
    566 F. Supp. 484 (N.D.N.Y. 1983) ........................................................................ 15

*Abilene Music Inc. v. Sony Music Entm't, Inc.,*
    320 F.Supp.2d 84 (S.D.N.Y. 2003) .................................................................. 9, 24

*Am. Int'l Grp., Inc. v. London Am. Int'l Corp.,*
    664 F.2d 348 (2d Cir. 1981)); ................................................................................ 9

*Arista Records LLC v. Lime Group LLC,*
    715 F. Supp.2d 481 (2010). ..................................................................................... 5

*Arista Records LLC v. Lime Group LLC,*
    784 F. Supp.2d 398 (S.D.N.Y. 2011) (KMW) ............................................. passim

*Associated Imports, Inc. v. Int'l Longshoremen's Assoc.,*
    609 F. Supp. 595 (S.D.N.Y. 1985). ................................................................ 24, 25

*Bouchat v. Champion Prods., Inc.,*
    327 F. Supp.2d 537 (D. Md. 2003) ....................................................................... 19

*Bronzini v. Classic Sec., LLC,*
    11 CIV. 2096 KBF, 2012 WL 1681745 (S.D.N.Y. May 2, 2012) .......................... 15

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986). ............................................................................................... 9

*Coleco Indus., Inc. v. Universal City Studios, Inc.,*
    No 84 Civ. 2596, 1986 WL 1809 (S.D.N.Y. Feb. 3, 1986) ................................... 21

*Columbia Pictures Indus., Inc. v. T&F Enter., Inc.,*
    68 F. Supp.2d 833 (E.D. Mich. 1999) ................................................................... 19

*Commissioner v. Sunnen,*
    333 U.S. 591 (1948) ............................................................................................... 14

*Cooper v. Parsky,*
    140 F.3d 433 (2d Cir. 1998) ..................................................................................... 5

*Davis v. Halpern,*
    813 F.2d 37 (2d Cir. 1987) ..................................................................................... 14

*Dracos v. Hellenic Lines, Ltd.,*
    762 F.2d 348 (4th Cir. 1985) ................................................................................. 15

*DSU Medical Corp. v. JMS Co., Ltd.*,
    471 F.3d 1293 (Fed. Cir. 2006)...................................................................................18

*EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos, Inc.*,
    228 F.3d 56 (2d Cir. 2000)...........................................................................................9

*Envtl. Defense v. U.S. Envtl. Prot. Agency*,
    369 F.3d 193 (2d Cir. 2004).........................................................................................14

*Faiveley Transp. USA, Inc. v. Wabtec Corp.*,
    No. 10 Civ. 4062 (JSR), 2011 WL 1899730 (S.D.N.Y. May, 13, 2011)...................19

*Faulkner v. Nat'l Geographic Enterprises Inc.*,
    409 F.3d 26 (2d Cir. 2005)................................................................................13, 14

*Gottesman v. Gen. Motors Corp.*,
    221 F. Supp. 488 (S.D.N.Y. 1963). .............................................................................14

*In re The Bennet Funding Grp., Inc.*,
    367 B.R. 269 (S.D.N.Y. Bankr. 2007) ........................................................................15

*In re Vivendi Universal, S.A. Secs. Litig.*,
    No. 02 Civ. 5571 (SAS), 2012 WL 3264382 (S.D.N.Y. Aug. 10, 2012). ..................21

*In re. Tug. Helen B. Moran Inc.*,
    607 F.2d 1029 (2d. Cir. 1979).....................................................................................24

*Indagro S.A. v. Bauche S.A.*,
    652 F. Supp.2d 482 (S.D.N.Y. 2009)...........................................................................14

*Int'l Shoe Machine Corp. v. United Shoe Machinery Corp.*,
    315 F.2d 449 (1st Cir. 1963).......................................................................................15

*Kregos v. Assoc. Press*,
    3 F.3d 656 (2d Cir. 1993)............................................................................................12

*Kwan v. Schlein*,
    634 F.3d 224 (2d Cir. 2011).........................................................................................11

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*,
    424 F.3d 195 (2d Cir. 2005)..........................................................................................9

*Marvel Characters, Inc. v. Simon*,
    310 F.3d 280 (2d Cir. 2002).........................................................................................13

*Mayer/Berkshire Corp. v. Berkshire Fashions, Inc.*,
    424 F.3d 1229 (Fed. Cir. 2005) .......................................................................... 14, 17

*Meiselman v. Hamilton Farm Golf Club LLC*,
    No. 11-0653, 2011 WL 3859846 (D. N.J. Sept. 1, 2011) ......................................... 21

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, LTD*,
    454 F. Supp.2d 966 (C.D. Cal 2006)) ................................................................... 10

*MGM Studios, Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ............................................................................... passim

*Mills v. Cottrell*,
    No. 04 Civ. 5562, 2007 WL 1988375 (S.D.N.Y. Jul. 6, 2007) ................................... 9

*Mount v. Book of the Month Club*,
    555 F.2d 1108 (2d Cir. 1977) ............................................................................. 12

*Parklane Hosiery Co., Inc. v. Shore*,
    439 U.S. 322 (1979) ........................................................................................ 20

*Phelps v. Hamilton*,
    22 F.3d 1309 (10th Cir. 1997) ........................................................................... 15

*Plus Products v. Natural Organics, Inc.*,
    No. 81–1798, 223 U.S.P.Q. 27 (E.D.N.Y. 1984) ...................................................... 15

*R.F.M.A.S., Inc. v. Mimi So*,
    619 F.Supp.2d 39 (S.D.N.Y. 2009), ..................................................................... 24

*Roberts v. Keith*,
    No. 04 Civ. 10079(CSH), 2006 WL 547252 (S.D.N.Y. Mar. 7, 2006) ........................ 12

*Roley v. New World Pictures, Ltd.*,
    19 F.3d 479, 481 (9th Cir. 1994) ........................................................................ 12

*Stone v. Williams*,
    970 F.2d 1043 (2d Cir. 1992) ........................................................................ 11, 12

*Taylor Wine Co., Inc. v. Bully Hill Vineyards, Inc.*,
    569 F.2d. 731 (2d Cir. 1978) .............................................................................. 24

*Teachout v. New York City Dept. of Educ.*,
    04 Civ. 945 (GEL), 2006 WL 452022 (S.D.N.Y. Feb. 22, 2006) .............................. 15

*Teevee Toons, Inc. v. MP3.com, Inc.,*
  134 F. Supp.2d 546 (S.D.N.Y. 2001)........................................................................ 19

*Wing Shin Products (BVI), Ltd. v. Simatelex Manufactory Co. Ltd.,*
  479 F. Supp.2d 388 (S.D.N.Y. 2007)........................................................................ 18

**Statutes**

17 U.S.C. § 507(b)..................................................................................................... 8, 15

Fed. R. Civ. P.  56(a). ................................................................................................ 13

**Other Authorities**

Wright & Miller, 18 Fed. Prac. & Proc. Juris. § 4417 (2d ed.).................................... 18

LimeWire LLC ("LimeWire"), Lime Group LLC ("Lime Group") and Mark Gorton (collectively the "Defendants") submit this memorandum of law in opposition to Plaintiffs' motion for partial summary judgment as to liability for inducement of copyright infringement under Count 1 of their Complaint.

PRELIMINARY STATEMENT

Collateral estoppel does not apply here because, while others were pursuing their claims against Defendants, the Plaintiffs here did nothing, and in the intervening years LimeWire changed. LimeWire was simply not the same company in February 2009 to October 2010, the relevant time period here, as it was in 2003 to 2006, the relevant time period in *Arista*.[1] In the intervening years, LimeWire dramatically changed its business model such that, by 2009, it was exclusively focused on creating a for-pay subscription-based service providing licensed content only. In addition to spending tens-of-millions of dollars developing new software for this purpose, LimeWire brought in several senior music industry executives to run the company and to try to negotiate a deal with the record industry; a deal that LimeWire came within a hair's breadth of reaching (when it couldn't, it closed down). Simultaneously, and because he lacked the necessary music industry connections and expertise, Mark Gorton, the Plaintiffs' real target here (because only he has the deep pockets to satisfy a judgment), backed away from the business, relinquishing his role as Chief Executive Officer and any say in how the company was run. LimeWire also took substantial measures during this period to frustrate any efforts to use the service to share music for free.

These changes matter. They were real, they were substantial, and Defendants should be allowed to put on a defense of this case based on these facts. Plaintiffs' motion, of course, is

---

[1] *Arista Records LLC v. Lime Group LLC*, 784 F. Supp.2d 398 (S.D.N.Y. 2011) (KMW)

designed to preclude them from doing so.  Having waited over 10 years to sue – LimeWire commenced operations in 2000 – the Plaintiff motion picture studios still do not want to have to prove their case.

Moreover, LimeWire's focus was music, not video.  In addition to showing that LimeWire changed, Defendants also intend to show that the LimeWire service did not readily – *ever* – lend itself to the sharing of lengthy video files.  The evidence that Defendants will present will show that, to the extent LimeWire was used to share video files, the principal content shared was music videos and pornography, neither of which is at issue here.

As to the content that *is* relevant here – Plaintiffs' movies and television shows – Plaintiffs simply have not presented the evidence necessary to establish direct infringement of copyright.  Evidence of direct infringement is an essential element of a claim for inducement of copyright infringement.  Plaintiffs purport to rely on the *Arista* decision to make their case, but they do so selectively.  Judge Wood in *Arista* made it crystal clear that the sort of evidence Plaintiffs submit here to establish direct infringement falls far short of what is required.  Moreover, Plaintiffs themselves readily concede that they cannot rely on *Arista's* findings of direct infringement since different works were at issue there.  Judge Wood's findings related to music MP3s *only*, and not at all to video.

More fundamentally, the *Arista* case did not address, at all, the issue of whether Defendants engaged in inducing conduct during the time period relevant to this case.  The *Arista* court's findings of direct infringement of music MP3s, to the extent they apply to a portion of the time period relevant here, say nothing at all about inducement.  The *Arista* court also was not presented with evidence of, and therefore had no opportunity (or cause, given the time frame of that case) to consider the evidence that will be presented in this case of LimeWire's affirmative

efforts *not* to induce infringement but instead to become a for-pay service licensed by the record industry. This case and the *Arista* case are different. The Defendants' names overlap, but the relevant time periods and the relevant facts and issues do not. Plaintiffs have only themselves to blame. They could have joined in the earlier litigation, or sued at the same time and had the cases consolidated, but they chose not to. While they sat and did nothing, the world did not stop; it changed. To now grant their motion excusing them from proving their case would be to reward their lengthy delay while penalizing Defendants by denying them their due process rights. The Supreme Court has held that where a plaintiff could have joined the earlier action that it says collaterally estops a defendant from contesting liability, the doctrine should not be applied. That applies in spades to the Plaintiffs here.

Defendants have a very real and persuasive defense to this case. They should be allowed to present it. The motion should be denied.

BACKGROUND

A. <u>LimeWire and the *Arista* Case</u>

LimeWire, formed in 2000, was always principally a music service. *See* Verified Amended Answer ("Answer") at ¶ 12, 16. Until the Supreme Court's decision in the *Grokster* case, no court had ruled that owners of a P2P network like LimeWire could be held secondarily liable for users' copyright infringement. *See MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005). Approximately one year after *Grokster*, various record companies sued the Defendants in *Arista* for secondary copyright infringement (vicarious, contributory and inducement). *Arista Records LLC v. Lime Group LLC*, 06 CV 5936 (S.D.N.Y. 2006) (KMW) (the "*Arista*" action). Unlike *Grokster*, *Arista* was purely a record industry action. No movie studio joined in the action or commenced one of its own against LimeWire. None of the Plaintiffs here commenced

3

an action against LimeWire, even though the *Grokster* decision gave them a clear basis for doing so.

The Plaintiffs' failure to sue when they first had a chance was no accident. LimeWire was known as a music service, not a video sharing service. Answer at ¶ 16. Fewer than 1.5% of files shared on LimeWire were video. *Id.* Defendants will present evidence that most of these were music videos and pornographic materials, and that LimeWire was not generally considered a suitable platform for sharing large video files of the sort that Plaintiffs here are concerned with.

Thus, Plaintiffs either believed it was not worth suing, or made a judgment that they could piggy back on the record industry case. Either way, they miscalculated. The statutory imitations period at issue in *Arista* was 2003-2006. *See* 17 U.S.C. § 507(b); *see also Arista*, 784 F. Supp.2d at 418. The statutory limitations period here, by Plaintiffs' own reckoning, is February 2009-October 2010 (the "Relevant Period"). Pl. Brief at 24. Discovery on liability issues related to Defendants' conduct in *Arista* closed in June 2008, more than six months *before* the events that are relevant in this case even happened. *See* Order Setting Discovery Deadlines, *Arista*, No. 06-5936 (S.D.N.Y. Apr. 2, 2008) (D.E. 69). Following the close of discovery, the *Arista* plaintiffs moved for partial summary judgment on their claims of contributory infringement and for inducement of infringement. Plaintiffs' MOL in Support of Their Motion for Partial Sum. J., *Arista*, No. 06-5936 (S.D.N.Y. Jul. 22, 2008) (D.E. 125). The record on summary judgment was fully presented, and the motion was fully briefed, by November, 2008, months before commencement of the Relevant Period here. *See* Plaintiffs' Reply MOL in Support of Sum. J., *Arista*, No. 06-5936 (S.D.N.Y. Nov. 7, 2008) (D.E. 179). In May 2010, Judge Wood issued her summary judgment decision holding Defendants liable (only) for

inducement of copyright infringement of musical works. *Arista*, 715 F. Supp.2d 481, 508-515 (S.D.N.Y. 2010).[2]

As with any plaintiff on an inducement claim, the *Arista* plaintiffs were required to show actual infringement. *See Grokster*, 545 U.S. 913. They met their burden by *proving actual illegal sharing of sound recordings* through expert analyses and sound recordings obtained from hard drives of LimeWire users. *Arista*, 784 F. Supp.2d at 423-24. The Plaintiffs here do not present such evidence.

Important (and necessary) to the *Arista* court's decision was a finding that LimeWire had purposefully and intentionally induced infringement. *Arista*, 784 F.Supp.2d at 424-31. In so holding, the *Arista* court relied almost exclusively on evidence from the period between LimeWire's creation and the commencement of the action (*i.e.*, 2000 through 2006). *Id.*[3]

The *Arista* court found Mr. Gorton personally liable for copyright inducement, noting that Mr. Gorton conceived of LimeWire, was the company's CEO during the limitations period at issue there, and was "intimately involved" in LimeWire's operations. *Id.* at 438.[4] Those findings simply do not apply in the period at issue here; a period where Defendants' conduct was not considered by, and not the subject of evidence presented to, Judge Wood.

---

[2] The court issued an "amended" version of its summary judgment opinion on May 2, 2011, which replaced the May 2010 opinion. *Arista*, 784 F. Supp.2d 398 (S.D.N.Y. 2011). Accordingly, Defendants cite to the May 2011 decision hereinafter. The only difference between the two opinions concerns the court's finding as to whether a "hash-based analysis" alone can support a finding of direct infringement for purposes of summary judgment. In the earlier opinion, the court found that it could. 715 F. Supp.2d at 507 n. 21. In the later controlling opinion, the court found that it could not. 784 F. Supp.2d at 423 n. 21. *See infra* p. 22-23.

[3] The *Arista* court was clear that the 2000-2003 evidence of Defendants' conduct prior to the limitations period could not provide the basis for recovery of damages, but was only "admissible to shed light on the motives with which acts within the limitations period were performed." *Arista*, 784 F. Supp.2d at 418 (quoting *Cooper v. Parsky*, 140 F.3d 433, 440-41 (2d Cir. 1998)).

[4] The Court also relied upon the fact that Gorton operated both LimeWire and Lime Group "as a single company," with shared offices, employees, computer services and staff. *Id.* at 438 (internal quotation marks omitted). Finally, Gorton owned 100% of Lime Group – the majority owner of LimeWire – which the court found gave Gorton an indirect majority share in LimeWire and thereby he personally benefitted from LimeWire's inducing conduct. *Id.* at 439.

When the court rendered its decision on summary judgment in *Arista*, the record industry and LimeWire were engaged in intensive and substantial negotiations about converting LimeWire to a for-pay, licensed service. Answer at ¶ 12. Because of this, the parties agreed to a provisional, consent injunction to allow them time to reach a deal. *Id.* at 28. When they failed, just barely, to do so, the parties proceeded to discovery and trial on the issue of damages. In May 2011, while that trial was ongoing, the parties reached a confidential settlement agreement and the action was dismissed with prejudice. Order Closing Case, *Arista*, No. 06-5936 (S.D.N.Y. May 24, 2011) (D.E. 741).

B. Defendant's Conduct and Intent in the Limitations Period,
   Which Was Not Before the Court or Considered in *Arista*

Mr. Gorton, the primary target of this lawsuit, resigned as CEO of LimeWire in 2007. Answer at ¶ 12. Put simply, LimeWire and Mr. Gorton realized that LimeWire was finished as a "free," unlicensed service, and thus, began the process to change the company's direction. *See id.* LimeWire changed its entire focus, transforming itself into an enterprise devoted to becoming a licensed, subscription music service. *Id.* This involved bringing in music industry executives who could reshape the company's marketing and technology and successfully negotiate a deal with their counterparts and former colleagues at the record companies. *Id.*

After Mr. Gorton stepped down and was succeeded by CEO George Searle in 2007, LimeWire began hiring key players in the entertainment industry for purposes of rebranding and legitimizing its product. Answer at ¶ 19. In July 2008, LimeWire brought in Francis Kim, formerly of Warner Music Group and Comcast Networks, as VP of Business Development (a role in which he was expected to negotiate deals with the record companies). *Id.* In 2009, the company brought in Zeeshan Zaidi, formerly of Sony BMG, RCA Music Group, and Arista Records, as Head of Global/COO. LimeWire also created a new position in 2009 – Vice

6

President, Product Management – for record label veteran and digital media guru Jason
Herskowitz, so that he could oversee LimeWire's integrated product strategy, planning, design
and management. *Id.* Herskowitz was at the forefront of the industry for legitimate streaming
music services, previously having held the title VP of Product Management at Total Music,
Universal Music and Sony's attempt to create and manage a legitimate music platform intended
to combat illegal file-sharing by offering free downloads and streaming music. *Id.* LimeWire
also hired John Pavley as VP, Engineering in 2009 to assist Herskowitz in getting the
subscription-based endeavor up and running. *Id.* Pavley followed his 2009-2010 stint at
LimeWire with a VP, Engineering position at Spotify, a wholly legitimate
subscription/advertising based music service of the sort LimeWire hoped to become. *Id.*
Ultimately, LimeWire failed where Spotify, Rhapsody and others succeeded; it was unable to
reach a comprehensive agreement enabling it to become a licensed, for-pay music subscription
service. *Id.* But it tried, and the fact that it did is part of what defeats not only Plaintiffs' motion
but also, ultimately, their claims.

　　　Evidence of LimeWire's change in focus, as demonstrated in part by its management
changes during the Relevant Period, was not presented to Judge Wood (but will be presented
here).

　　　Meanwhile, in the Relevant Period, LimeWire's founder, Mr. Gorton, no longer held *any*
position at LimeWire, and had *no* role in the day-to-day operations of the company. *Id.* at ¶ 12.
Further, Mr. Gorton no longer even had a direct financial stake in LimeWire, and neither he nor
Lime Group drew any profits from LimeWire's revenues during this time. *Id.*

　　　In 2009, LimeWire successfully entered into a licensing deal with a consortium of
independent music labels. *Id.* at ¶ 19. Negotiations with numerous other copyright holders

7

progressed and culminated in draft term sheets and deal terms with certain of these companies. *Id.* Among the entities that LimeWire conducted licensing negotiations with during this time were the Recording Industry Association of America, Disney Records, EMI, Lionsgate, Network Music, Sony BMG, Sony Digital, Titan Media, Universal Music Group, Warner Music Group, iTunes, Microsoft, Yahoo, iMesh and AOL.[5] *Id.*

During the Relevant Period, far from continuing to develop, maintain and market software enabling users to violate copyrights, LimeWire undertook a massive effort to develop the software to support the new, licensed subscription service it hoped to launch. *Id.* During this period, LimeWire spent tens of millions of dollars to design and create this software. *See id.* At the same time, LimeWire took various and increasing measures designed to prevent infringement, including the introduction of an enhanced filtering system to identify copyrighted material which was automatically set to "on" when a user launched the software. *Id.* at ¶ 24. The new technology had a significantly streamlined process for adding new hashes[6] to the database, making it exceedingly difficult for users to share copyrighted files (LimeWire's testing of the new filter demonstrated that it had a success rate of ninety-nine percent). *Id.* Finally, LimeWire embedded a series of new copyright notice warnings directly into the file sharing software (prior warnings were only included on its website). *Id.* In each subsequent version of the software, the warning appeared more frequently and increased in forcefulness. *Id.*

---

[5] Negotiations with these entities progressed substantially. *Id.* The proposed business arrangement would have funneled value to copyright holders through ongoing license royalties and an equity ownership in the business. *Id.* Until the entry of the consent injunction on October 26, 2010, which shut LimeWire down, LimeWire believed that it could reach an agreement with all the major record companies as it had done with the consortium of independent music labels. *Id.*

[6] A "hash" is a property of a digital file that reflects its content, quality, resolution, length, encoding, and any "ripping" software that has been used to transfer the file. *Id.* Two files with the same content share the same hash. *Id.* LimeWire's filter worked by comparing hash values of copyrighted works to the files being shared over the network; when the filter identified a "hash match," it automatically marked the file as "not shareable" and permanently blocked the file from being uploaded or downloaded. *Id.*

Finally, by 2009-2010 LimeWire had entirely abandoned _all_ efforts to market or advertise the software, including all practices deemed 'intended to induce' by _Arista_. _Id._ at ¶ 17. This included eliminating marketing targeted at college students and known infringers (such as users of other shut down P2P sites) via certain types of advertising (e.g., Google key word), press campaigns, and other promotions. _Id._

## ARGUMENT

## I.  LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment is appropriate only if the movant shows that "there is no genuine dispute as to any material fact." Fed. R. Civ. P.  56(a).  The movant bears the initial burden of setting out the basis for its motion and identifying those portions of the record that "demonstrate the absence of a genuine issue of material fact." _Celotex Corp. v. Catrett_, 477 U.S. 317, 322-23 (1986).  The court is not to weigh the evidence, but rather construe it in the light most favorable to, and draw all inferences and resolve all ambiguities in favor of, the non-movant. _See LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp._, 424 F.3d 195, 205 (2d Cir. 2005).  Courts should be "especially wary of granting summary judgment in cases involving copyright infringement, because they often are highly fact dependent." _Abilene Music Inc. v. Sony Music Entm't, Inc._, 320 F.Supp. 2d 84, 88 (S.D.N.Y. 2003) (internal quotation marks and citation omitted).  In the same vein, it is well-settled that "[t]he question of subjective intent… is 'generally [an] inappropriate subject [ ] of summary judgment.'" _Mills v. Cottrell_, No. 04 Civ. 5562, 2007 WL 1988375, at *2 (S.D.N.Y. Jul. 6, 2007) (alterations in original) (quoting _Am. Int'l Grp., Inc. v. London Am. Int'l Corp._, 664 F.2d 348, 353 (2d Cir. 1981)); _see also EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos, Inc._, 228 F.3d 56, 68 (2d Cir. 2000) (questions of

intent are "best left in the hands of the trier of fact") (internal quotation marks and citations omitted).

   B.  Inducement of Copyright Infringement

   In *Grokster*, 545 U.S. 913 (2005), the Supreme Court held that "one who distributes a device with the object of promoting its use to infringe copyright, as shown by a clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement of third parties." *Id.* To establish inducement – or *any* secondary liability for copyright infringement – "a plaintiff first must establish direct infringement by the relevant third party, i.e., the party that received the infringement-enabling device." *Arista,* 784 F.Supp.2d 398 at 423 (citing *Grokster*, 545 U.S. at 940). Establishing direct infringement requires a showing that a third party engaged in unauthorized copying or distribution of the copyrighted works. *Id.*

   If direct infringement is established, a plaintiff must then show that defendant "(1) engaged in *purposeful conduct* that encouraged copyright infringement, (2) with the *intent to encourage* such infringement" within the relevant statutory period. *Id.* at 425 (citing *Grokster*, 545 U.S. at 937) (emphasis added). On this point, the *Grokster* Court was unequivocal: "[M]ere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor to liability ... The inducement rule, instead, *premises liability on purposeful, culpable expression and conduct* ... show[ing] an affirmative intent that the product be used to infringe." *Grokster*, 545 U.S. at 936-37 (emphasis added); *see also* Pl. Br. at 13 (quoting *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, LTD*, 454 F. Supp.2d 966, 985 (C.D. Cal 2006)) ("the inquiry focuses on the defendant's intent, which can be shown by evidence of the defendant's expression or conduct").

Here, Plaintiffs do not, and at this stage of the action cannot, show either direct infringement, or purposeful and intentional inducement thereof by Defendants. On the first point, their evidence is simply inadequate; on the second, it is nonexistent – the *Arista* case simply did not address whether Defendants here had the purpose and intent of inducing infringement during the Relevant Period. Moreover, Defendants in their Verified Amended Answer and herein have shown that they can and will make a showing that not only was any such purpose and intent absent, but that there was during the Relevant Period an affirmative purpose and intent *not* to infringe, but instead that they took concrete, identifiable and expensive measures to become a legitimate music sharing service. *See* Answer at ¶¶ 12, 19, 24.

## II. DEFENDANTS ARE NOT COLLATERALLY ESTOPPED FROM LITIGATING WHETHER THEY INDUCED COPYRIGHT INFRINGEMENT IN 2009-2010

### A. Genuine Issues of Material Fact, Not Resolved By The *Arista* Court Preclude Summary Judgment

#### 1. Under the Copyright Law, the Relevant Period Is February 2, 2009 Through October 26, 2010

Civil actions arising under the Copyright Act must be brought within three years of the time the claim accrues. 17 U.S.C. § 507(b). A plaintiff cannot recover for copyright infringement that took place more than three years prior to the filing of the complaint. *Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011); *Stone v. Williams*, 970 F.2d 1043, 1049-50 (2d Cir. 1992). This rule applies to Plaintiffs' claim for inducement of copyright infringement. *Arista*, 784 F. Supp.2d at 418 (applying three year limitations period to claim for copyright infringement based on inducement).

Plaintiffs cannot rely on pre-2009 inducement conduct to prove their infringement claims. It is settled law in the Second Circuit that acts of infringement occurring outside of the limitations period cannot provide the basis for a claim even if they were arguably part of a

"continuous course" of conduct. *Stone*, 970 F.2d at 1050 ("Application of the continuous wrong doctrine generally has been rejected in the infringement context.") (citation omitted).[7] Thus, for Plaintiffs to prevail, *both Defendants' inducement as well as any acts of direct infring*ement must have occurred within the limitations period. *See Mount v. Book of the Month Club*, 555 F.2d 1108, 1009-10 (2d Cir. 1977) (emphasis added).

The current action was commenced on February 2, 2012. Thus, the relevant period to assess LimeWire's conduct here is February 2, 2009 (the beginning of the limitations period) through October 26, 2010 (the date of the court-ordered shutdown of LimeWire). Plaintiffs concede this point.

### 2. The *Arista* Court Only Considered Defendants' Conduct and Intent Prior to the 2009-2010 Limitations Period and Based Its Decision Solely on Such Evidence

In finding Defendants liable for inducement of copyright infringement, the *Arista* court relied exclusively on evidence of Defendants' conduct and intent predating the Relevant Period, principally conduct that occurred prior to 2006. *Arista*, 784 F. Supp.2d at 431; *see also* Compl. ¶¶ 17, 21-26. In *Arista*, discovery on liability issues related to Defendants' conduct closed on June 18, 2008 and Plaintiffs' partial summary judgment motion on inducement was fully briefed by November 7, 2008. *See* Plaintiffs' Reply MOL in Support of Sum. J., *Arista Records*, No. 06-5936 (S.D.N.Y. Nov. 7, 2008), (D.E. 179). Thus, the *Arista* court did not – and could not– consider _any_ of Defendants' conduct during 2009-2010 because it was presented with absolutely no evidence of such conduct. Not surprisingly, the court's opinion is replete with references to

---

[7] For example, in *Stone*, the court held that each act of infringement is a "distinct harm giving rise to an independent claim for relief," and "[r]ecovery is allowed only for those acts occurring within three years of suit, and is disallowed for earlier infringing acts." *Id.* at 1049-50. Numerous cases support this basic proposition and reject any theory of continuing infringement. *See, e.g., Kregos v. Assoc. Press*, 3 F.3d 656, 662 (2d Cir. 1993) (rejecting the "continuing-infringement" doctrine and applying *Stone* to dismiss all infringement claims as time-barred); *Roberts v. Keith*, No. 04 Civ. 10079(CSH), 2006 WL 547252, at *4 (S.D.N.Y. Mar. 7, 2006) (same); *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994) (describing *Stone* as the "prevailing view" of § 507(b)).

its reliance on evidence of LimeWire's purposeful conduct and intent up until and including 2006, yet contains *not a single reference* to any Defendant conduct during 2009-2010. For example, the *Arista* court cited the following factors, among other conduct pre-dating the statutory period relevant here, in finding Defendants liable for inducement:

- Pre-2006 evidence showing Defendants' knowledge of infringement by users, *Arista*, 784 F.Supp.2d at 426;
- Defendants' efforts to attract former Napster customers to LimeWire from 2001 through 2006, *id.* at 427-28;
- LimeWire's assistance, prior to 2006, in helping its users download digital recordings, such as offering technical help to customers, *id.* at 428;
- Defendants' profits from LimeWire's revenue from 2000 through 2006, *id.* at 429;
- LimeWire's failure in 2006 to implement certain technological barriers that would have mitigated the amount of illegal downloading of copyrighted material occurring through LimeWire. *id.* at 429-30.

Each of these facts predates the Relevant Period.  The *Arista* court made no adjudication with respect to LimeWire's conduct between 2009 and 2010.

3. Defendants Should Not Be Collaterally Estopped From
   Defending Against Plaintiffs' Claims In This Action

The doctrine of collateral estoppel applies only in limited and very narrow circumstances not present here:

> In order for a plaintiff to bar a defendant from litigating an issue on collateral estoppel grounds: (1) the issues in both proceedings *must be identical*, (2) the issue in the prior proceeding *must have been actually litigated and actually decided*, (3) there *must have been a full and fair opportunity for litigation* in the prior proceeding, and (4) the *issue previously litigated must have been necessary* to support a valid and final judgment on the merits.

*Faulkner v. Nat'l Geographic Enterprises Inc.*, 409 F.3d 26, 37 (2d Cir. 2005) (internal quotation marks and citation omitted); *see also Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002).

When the Second Circuit says the "issues in both proceedings must be identical," it means *"identical in all respects"* such that both the law *and "the controlling facts ... remain*

unchanged." *Faulkner,* 409 F.3d at 37 (quoting *Commissioner v. Sunnen,* 333 U.S. 591, 599-600

(1948)) (emphasis added).  If "new facts are *in any way distinguishable* from the facts found in

the first suit for purposes of the substantive rules applied in the first suit… preclusion is not

appropriate." Wright & Miller, 18 Fed. Prac. & Proc. Juris. § 4417 (2d ed.) (emphasis added);

*see also Envtl. Defense v. U.S. Envtl. Prot. Agency,* 369 F.3d 193, 202 (2d Cir. 2004); *Indagro*

*S.A. v. Bauche S.A.,* 652 F. Supp. 2d 482, 486-87 (S.D.N.Y. 2009) ("Issue preclusion 'does not

apply … when the essential facts of the earlier case differ from the instant one, even if they

involve the same legal issues.'") (quoting *Envtl. Defense,* 369 F.3d at 202) (alteration in

original).

The requirement of identity of factual issues simply is not met here.  The facts of the

earlier case and the facts of this one are different.  It was not necessary in *Arista* for Judge Wood

to decide whether the Defendants intended to and did induce copyright infringement as to motion

picture and television properties in the time period February 2009 through October 2010, and she

did not do so.  She *could not* – no evidence was presented to her on those issues.

The fact that the earlier case and this one involve different time periods is dispositive.  "A

decree is an estoppel only as to the time with which it dealt." *Gottesman v. Gen. Motors Corp.,*

221 F. Supp. 488, 493 (S.D.N.Y. 1963).  Courts routinely find that collateral estoppel does not

apply when the cases in question involve time periods and different facts.  *See, e.g.,*

*Mayer/Berkshire Corp. v. Berkshire Fashions, Inc.,* 424 F.3d 1229, 1234 (Fed. Cir. 2005)

("changed circumstances in the five-year period" between suits rendered collateral estoppel

improper); *Davis v. Halpern,* 813 F.2d 37 (2d Cir. 1987) (rejection from law school for 1983-

1984 was factually distinct for collateral estoppel purposes from rejection from the same law

school for later terms); *Bronzini v. Classic Sec., LLC,* 11 CIV. 2096 KBF, 2012 WL 1681745 at

14

*3 (S.D.N.Y. May 2, 2012) ("[A]ny issues that arose after plaintiff submitted his amended complaint... [in the prior action] and predicated on distinct essential facts are not barred by the collateral estoppel doctrine."); *Plus Products v. Natural Organics, Inc.*, No. 81–1798, 223 U.S.P.Q. 27, 29 (E.D.N.Y. 1984) (rejecting collateral estoppel argument where although "issue to be determined in this case is identical to that raised in the [prior] proceedings" facts were different because passage of time led to changed circumstances).[8]

The *Plus Products* decision is particularly on point. There, the court refused to apply collateral estoppel despite the fact that it found the central issue before it identical to that raised in the prior proceedings. The court reasoned:

> [S]ummary judgment on the grounds of collateral estoppel would be inappropriate at this time. The [prior] decision was based on the likelihood of confusion by consumers in the market as it appeared in the early 1970's. Since that time the markets, consumers, volume of business and advertising of the parties have changed significantly. *The [prior] determination of likelihood of confusion may be totally irrelevant in this new environment. It would be unfair to award summary judgment on collateral estoppel grounds without some findings of fact as to likelihood of confusion at this time* ... [The prior action's] record was closed in 1977. Plaintiff waited until 1982 to bring the infringement action. During this time it was aware of defendant's growth and expansion. *Plaintiff may not now seek to put defendant out of business [by invoking offensive collateral estoppel] on the basis of a record that no longer adequately describes the situation.* A trial on the merits is required to determine whether a likelihood of confusion of the marks in issue exists at this time.

---

[8] *See also In re The Bennet Funding Grp., Inc.*, 367 B.R. 269, 292 (S.D.N.Y. Bankr. 2007) (collateral estoppel did not apply to conduct of defendant during different time periods); *Teachout v. New York City Dept. of Educ.*, 04 Civ. 945 (GEL), 2006 WL 452022, at *17 (S.D.N.Y. Feb. 22, 2006) ("[T]he different complaints address different time periods, and so there are certain issues that are not identical and therefore not subject to estoppel."); *423 S. Salina St., Inc. v. City of Syracuse*, 566 F. Supp. 484 (N.D.N.Y. 1983) (prior determination that city over-assessed plaintiff from 1971-1976 had no preclusive effect on subsequent suit alleging over-assessment from 1977-1979). The notion that the passage of time and resultant changed circumstances precludes application of collateral estoppel is well-established throughout the Circuits. *See, e.g., Phelps v. Hamilton*, 122 F.3d 1309, 1321-22 (10th Cir. 1997) (collateral estoppel not applied because conduct at issue in subsequent action occurred *after* decision in prior action); *Dracos v. Hellenic Lines, Ltd.*, 762 F.2d 348, 352 (4th Cir. 1985) (prior determination as to choice of law was based on "defendant's operations *only at the time*" and thus had no preclusive effect on the subsequent action) (emphasis added); *Int'l Shoe Machine Corp. v. United Shoe Machinery Corp.*, 315 F.2d 449, 455 (1st Cir. 1963) ("the passage of time may evoke change of circumstances which preclude the creation of an estoppel") (citation omitted).

*Plus Products*, 223 U.S.P.Q. at *28-29 (emphasis added) (citing *U.S. v. Certain Land at Irving Place & 16th Street*, 415 F.2d 265, 269 (2d Cir. 1969)). The same is true here.

In the Relevant Period, LimeWire was a rebranded company with new goals and intentions and different management. *See* Answer at ¶¶ 12, 19. It had implemented various changes to the design of its software, not considered by the court in *Arista*, to reduce and eliminate infringement by its users. *Compare* Answer at ¶ 24 (describing how the enhanced filtering system filter was automatically set to "on"), *with Arista*, 715 F.2d at 513 (LimeWire "could have made the hash-based content filter mandatory for all LimeWire users, or made 'on' the default setting..."). It had ceased *all* promotional efforts and advertising campaigns including those the *Arista* court found objectionable. Answer at ¶ 17. Thus, all the marketing efforts geared at former Napster users that Judge Wood held supported Defendants' intent to target infringing users and induce copyright infringement in that case, *Arista*, 715 F.Supp.2d at 510-511, were no longer being pursued during the statutory period at issue here. Answer at ¶ 17.

Plaintiffs make a superficial attempt to establish that *Arista* addressed facts from the Relevant Period. They argue that "the vast majority of the acts of infringement for which the Arista court held Defendants liable took place in the 2009 and 2010 timeframe." Pl. Br. at 22. Plaintiffs' careful choice of words was no accident; all the "acts of infringement" they reference are *acts of direct infringement* (of musical works) by third party users, and *not* the acts of *inducement* that are an essential element of their claim here. Plaintiffs concede that they "do not suggest the issue of direct infringement of Plaintiffs' works by LimeWire users can be decided through the application of collateral estoppel." Pl. Br. at 12 n.1. They are correct, and as with their "evidence" – citations to *Arista* – on the inducement point, their evidence of direct infringement is inadequate.

Plaintiffs lodge a handful of other unavailing arguments in a futile effort to show that the *Arista* decision was based on Defendants conduct in 2009-2010, all of which can be disposed of in short order. First, Plaintiffs' contention that the *Arista* court considered Defendants' 2009-2010 conduct because it issued its opinion on inducement in 2010 (and on direct infringement in 2011) is not well founded. The critical date is not when Judge Wood issued her decisions, but when the factual record (relevant to Defendants' conduct) before her closed. It is undisputed that discovery closed in *Arista* in June 2008, and Plaintiffs' summary judgment motion was fully briefed by November, 2008. The court could not have considered Defendants' 2009 and 2010 conduct because there was no such conduct to consider. *See Mayer/Berkshire*, 424 F.3d 1229. Likewise, Plaintiffs' assertions that the court considered LimeWire's arguments "that they had stopped engaging in the most egregious infringing conduct and therefore were not intentionally fostering infringement" are disingenuous because (a) the court made no such findings, and (b) even if it had, any such findings would not have accounted for the changed circumstances in 2009-2010. Defendant LimeWire existed for little more than a decade. During that period its operations, strategies, and goals evolved and changed dramatically particularly toward the end of that period. Much the same can be said for Mr. Gorton's role in LimeWire's operations. This is not to say that the factual record before the *Arista* court is not relevant to the issue of inducement in the present case, only that the record is incomplete and, therefore, not determinative of LimeWire or Mr. Gorton's conduct and intent in 2009-2010. The doctrine of collateral estoppel should not be used to preclude Defendants from placing obviously relevant evidence before the trier of fact.

17

B. Genuine Issues of Material Fact Exist As To Whether Defendants
   Intended to Encourage Infringement Of Video Files

Plaintiffs concede that the underlying acts of copyright infringement in *Arista*

(infringement of music recordings) were different from those alleged here (infringement of

movies/television shows). Pl. Br. at 16-17.  That distinction matters.  Plaintiffs must

demonstrate that Defendants had the "specific intent" to induce the underlying acts of direct

infringement.[9]  The issue of specific intent to induce infringement of video copyrights was not

addressed in *Arista*.

Rather, the *Arista* court made clear, throughout its opinion, that it only considered

Defendants' conduct and intent to induce copyright infringement of *music recordings*.  For

example, the court focused upon LimeWire's (i) functionality, features and enhancements

specifically intended and designed by Defendants to facilitate music downloads;[10] (ii) targeted

promotion and advertising efforts specifically intended to attract music infringers;[11] (iii)

---

[9] In *Grokster*, the Supreme Court held that intent to induce infringement must be evidenced by "clear" and
"purposeful" expression evincing an "actual purpose to cause infringing use."  *Id.* at 934, 937.  This "specific intent"
requirement, implicit in *Grokster*, has since been made explicit.  *See DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d
1293, 1306 (Fed. Cir. 2006) (noting that *Grokster* "validates this court's articulation of the [specific intent]
requirement for inducement); *Wing Shin Products (BVI), Ltd. v. Simatelex Manufactory Co. Ltd.*, 479 F. Supp.2d
388, 407 (S.D.N.Y. 2007) (inducement of infringement requires showing of "specific intent to encourage another's
infringement").

[10] *See, e.g., Arista*, 784 F. Supp.2d at 414 ("LimeWire's feature set is optimized for downloading popular audio
files"); *id.* at 427 ("[P]ublicizing features of LimeWire that make finding your favorite artist or album … easier.")
(internal quotation marks omitted); *id.* at 428 ("LimeWire's search functions are designed to facilitate searches for
copyrighted digital recordings.  The program's user interface allows users to search for specific artists or albums, or
to search for music by genre."); *id* ("LimeWire tested and sought to improve LimeWire's ability to search for and
download unauthorized copies of digital recordings.")  *id.* ("LW conducted a search for Sinead O'Connor's
copyrighted song 'Nothing Compares 2 U,' which it considered a 'definitive test' of LimeWire's file-sharing
capabilities.").

[11] *See, e.g., id.* at 427 (Defendants "purposefully marketed LimeWire to individuals who were known to use file-
sharing programs to share copyrighted recordings"); (Marketing LimeWire as similar to Napster in that it "enables
the sharing, searching, and downloading of MP3 music files"); (Marketing campaign containing the following terms
and boasts "'napster mp3' … 'mp3 free download … 'Free music downloads' … 'excellent for downloading music
files' and 'hand's-down the best current mp3 search tool'").

Case 1:12-cv-00818-HB   Document 37   Filed 11/12/12   Page 25 of 31

knowledge that its users were utilizing its software to infringe music;[12] (iv) financial success,

which was based predominantly upon its users infringing upon *copyrighted digital recordings*."

*Id*. at 429 (internal quotation marks omitted) (emphasis added);[13] and (v) failure to mitigate

infringement by, among other things, not "block[ing] unauthorized *recordings* from appearing in

LimeWire searches." *Id*. at 430  (emphasis added).

   These detailed evidentiary findings of intent to induce infringement of *music recordings*

do not estop Defendants from introducing evidence of a lack of conduct and intent to induce the

infringement of plaintiffs' video files.[14] *Grokster* makes clear that with respect to Defendants'

"affirmative steps taken to foster infringement" they are only "liable for the *resulting* acts of

infringement by third parties." *Grokster*, 545 U.S. at 937 (emphasis added).  Since the *Arista*

---

[12] *See, e.g., id.* at 427 ("[P]ress campaigns on college campuses relating to 'file-sharing and getting free MP3's [i.e., music]"); *id.* at 426 (Statement of LW's goals acknowledges that: "Currently, the most common use of the Gnutella Network is the sharing of music files, many of them copyrighted"); *id.* (LW Offering Memorandum stated that "LimeWire 'allows people to exchange copyrighted mp3 files … An 'mp3 file' is a digital audio file that commonly contains music").

[13] *See also id.* at 428 ("It is undisputed that the vast majority of MP3 music files are copyrighted and not authorized for free distribution through LimeWire.") (internal quotation marks omitted).

[14] Plaintiffs baldly argue that these evidentiary distinctions are "legally irrelevant." Pl. Br. at 20.  Plaintiffs do not cite not a single case to support this claim.  The cases they do cite simply stand for the unremarkable proposition that when the exact same copyright infringement, with the exact same underlying intent, is at issue in two separate cases, collateral estoppel may apply.  In both *Teevee Toons, Inc. v. MP3.com, Inc.*, 134 F. Supp.2d 546 (S.D.N.Y. 2001) and *Country Road Music, Inc. v. MP3.com, Inc.*, 279 F. Supp.2d 325 (S.D.N.Y. 2003) collateral estoppel was based on the fact that defendants' liability for copyright infringement in prior cases concerned the exact type of copyright infringement in the subsequent case: infringement of *music recordings*. *Faiveley Transp. USA, Inc. v. Wabtec Corp.*, No. 10 Civ. 4062 (JSR), 2011 WL 1899730 (S.D.N.Y. May, 13, 2011) concerned misappropriation of trade secrets and the only argument against collateral estoppel was based on differences in the applicable law—issues not presented here. *Bouchat v. Champion Prods., Inc.*, 327 F. Supp.2d 537 (D. Md. 2003) involved copyright infringement of the *identical* drawing that was at issue in the prior action.  Finally, the issue in *Columbia Pictures Indus., Inc. v. T&F Enter., Inc.*, 68 F. Supp.2d 833 (E.D. Mich. 1999) was whether a defendant's plea in a criminal case had preclusive effect in a subsequent civil case—again, a far cry from the issues presented.  Plaintiffs also erroneously argue that under *Grokster*, "it is the distribution of the software with culpable intent that constitutes the unlawful inducement of copyright infringement." Pl. Br. at 20.  Not surprisingly, Plaintiffs quote no language in *Grokster* to support this broad interpretation, but rather, rely on an inapposite footnote suggesting that evidence of intent to induce infringement by "a particular consumer" is not required to prove inducement liability.  Pl. Br. at 20 (citing *Grokster*, 545 U.S. at 940 n. 13).  Defendants here do not argue that Plaintiffs must prove intent to specifically induce each individual act of direct infringement, but rather, that Defendant simply intended to induce the type of infringement that actually occurred.  Similarly, Plaintiffs protestation that *Grokster*'s holding is "content neutral" is a red herring because Defendants never contend that *Grokster*'s holding was premised on *content* but rather Defendants' *intent*.

court dealt exclusively with Defendants' affirmative steps to foster music infringement, any infringement of videos by third parties were not a *result* of *those* affirmative steps, making application of collateral estoppel inappropriate.[15]

C. Plaintiffs Should Not Be Permitted to Offensively Invoke Collateral Estoppel Because They Had Every Opportunity to Join in the *Arista* Litigation, But Chose Not to Do So

Plaintiffs cite the *Grokster* court's grant of summary judgment for both record companies and movie studios as support for their argument that the same course should be followed here. Pl. Br. at 20-21. In fact, *Grokster* speaks precisely to why Plaintiffs are *not* entitled to summary judgment. In *Grokster*, the movie studios joined suit with the record companies, the two industries tried the case together, and both sets of plaintiffs adduced evidence of Defendants' intent to induce infringement of their respective intellectual property. Here, Plaintiffs chose not to pursue litigation with the record companies and sat on their rights for *six years* after the record companies brought suit.

"[W]here a plaintiff could easily have joined in the earlier action... a trial judge should not allow the use of offensive collateral estoppel." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331 (1979). This is so because offensive collateral estoppel "gives the plaintiff... every incentive to adopt a wait and see attitude, in the hope that the first action by another plaintiff will

---

[15] Plaintiffs further argue that the distinctions between the underlying infringements are not legally relevant because *Grokster* did not distinguish between the underlying music and video infringement at issue there. Pl. Br. at 20-21. *Grokster did*, however, distinguish between intent to induce infringement of music from intent to induce infringement of video. *Grokster*, 545 U.S. at 923 ("[Defendants'] have learned about their users' infringement directly, as from users who have sent e-mail to each company with questions about playing copyrighted *movies* they had downloaded, to whom the companies have responded with guidance") (emphasis added); *Id.* at 939 (finding that defendants' software was capable of distributing "copyrighted *movies* and software programs") (emphasis added). On remand the Central District of California similarly distinguished between intent to induce infringement of music and video files. *Grokster*, 454 F. Supp.2d 966, 980 (Defendant Streamcast knew that its users were infringing movies including Tomb Raider, The Blair Witch Project, Shrek and The Mummy's Return). At the very least, there is a genuine issue of material fact as to whether or not the evidence of intent to induce copyright infringement of music recordings is the same as the evidence of intent to induce copyright infringement of movies/television works.

result in a favorable judgment." *In re Vivendi Universal, S.A. Secs. Litig.*, No. 02 Civ. 5571 (SAS), 2012 WL 3264382, at *4 (S.D.N.Y. Aug. 10, 2012).[16]

Here, the earlier decision resulted in a favorable judgment, but not on the issues relevant to this case. The *Arista* court did not consider the matters relevant here, and in the intervening years between commencement of that case and commencement of this one the relevant facts changed rather dramatically. Plaintiffs had every opportunity to join in the *Arista* action. Their failure to do so is reason enough to deny their motion. Regardless, their decision to wait backfired on them – the relevant facts have changed, and their hope of relying on the outcome of the *Arista* case simply cannot properly be realized.

## III. GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER LIMEWIRE USERS DIRECTLY INFRINGED UPON PLAINTIFFS' WORKS

Before Plaintiffs can even get to proving their inducement claim they "must first establish direct infringement by the relevant third party." *Arista*, 748 F. Supp.2d at 423. Direct infringement is established by showing that "(1) the plaintiff owns the copyright or copyrights at issue; and (2) the third party infringed the copyrights by unauthorized copying or distribution." *Id.* Putting aside the question of whether Plaintiffs' paltry sample of a handful of the works at issue sufficiently meets their burden of proving ownership at this stage, Plaintiffs have failed to adequately demonstrate that LimeWire users directly infringed upon *any* of Plaintiffs works. This is not a pro-forma undertaking as Defendants believe the evidence will show that actual file

---

[16] *See also Coleco Indus., Inc. v. Universal City Studios, Inc.*, No 84 Civ. 2596, 1986 WL 1809, at *4 (S.D.N.Y. Feb. 3, 1986) (observing that the "commonality of factual background and witnesses indicate[d] that joinder would have been appropriate in [the prior] case and would have served the ends of judicial economy by resolving" all claims at the same time and ultimately rejecting collateral estoppel on the merits); *Meiselman v. Hamilton Farm Golf Club LLC*, No. 11-0653, 2011 WL 3859846, at *4 (D. N.J. Sept. 1, 2011) (rejecting use of offensive collateral estoppel because, among other things, "Plaintiffs... might have chosen to opportunistically 'wait and see' what the outcome of other disputes against Defendant... would be").

sharing of film/television videos by LimeWire users was rare given the technical difficulty in downloading large files.

Plaintiffs concede that "the issue of direct infringement of Plaintiffs' works by LimeWire users [cannot] be decided through the application of collateral estoppel." Pl. Br. at 12 n.1. Plaintiffs, however, claim that they can surmount this evidentiary hurdle at this early stage by "submit[ting] summary judgment evidence demonstrating ownership and infringement of a small sample of the total universe of allegedly infringed works at issue in this case," only to submit corresponding evidence for approximately 2,000 additional copyrighted works at or in advance of a trial on damages. *Id.* Conclusorily arguing that neither Plaintiffs' ownership of the copyrights at issue, nor the infringement thereof by LimeWire users "is genuinely in dispute here," Plaintiffs speciously attempt to equate their proof of direct infringement with that accepted by the court in *Arista*. *Id.* at 12. Plaintiffs' purportedly analogous proof, however, is anything but, and in fact, the *Arista* court expressly held that the very evidence offered here was insufficient as a matter of law to establish direct infringement for purposes of summary judgment.

In *Arista*, Judge Wood indicated that Plaintiffs submitted "substantial" evidence in support of direct infringement including "documentation and *electronic storage media data* showing that LimeWire users share and download unauthorized digital copies of the Recordings through LimeWire ... *[providing] hard drives that contain digital copies of the Recordings, with electronic evidence that establishes that the Recordings were downloaded* by LimeWire users without authorization." *Arista*, 784 F.Supp.2d at 423 (emphasis added). On the other hand, Judge Wood observed that "[a] genuine issue of fact exists as to whether 'hash'-based analysis may independently support a finding of direct infringement." *Id.* at n.21. Although the *Arista*

court could not decide a disputed issue of fact on summary judgment, the remainder of the (non "hash"-based) evidence offered by plaintiffs sufficiently supported direct infringement. *Id.* at 424. Nevertheless, Judge Wood's finding was clear: hash-based documentary evidence in and of itself is not sufficient to establish direct infringement on summary judgment.[17]

Here, unlike *Arista*, plaintiffs submit *nothing* but the bare-bones "hash"-based analysis the *Arista* court expressly found insufficient as a matter of law to independently support direct infringement.[18] Notably, Plaintiffs have not submitted any of the "electronic storage media data … [or] hard drives that contain digital copies of the Recordings, with electronic evidence" (not to mention expert testimony and other documentary evidence) that the court relied upon to grant summary judgment on direct infringement in *Arista*. *Id.* at 423. Judge Wood's express finding on this very issue lays waste to Plaintiffs' direct infringement argument. Accordingly, Plaintiffs have failed to meet their burden of proving direct infringement at this early stage in the litigation.

## IV. PRINCIPLES OF STARE DECISIS DO NOT SUPPORT SUMMARY JUDGMENT

Plaintiffs' reliance on *stare decisis* puts the cart before the horse. In the main, the argument boils down to this: assuming collateral estoppel does not apply because the facts

---

[17] In fact, Judge Woods went to great lengths to make this point, going so far as to issue an "amended" summary judgment opinion on May 2, 2011 solely to correct the prior opinion's finding that a "hash-based analysis" – in and of itself – could support a finding of direct infringement, and to make clear that any such evidence was insufficient for purposes of summary judgment. 784 F. Supp.2d at 423 n.21.

[18] *See* Decls. of Chris Connelly and Travis Hill in Support of Motion for Partial Summary Judgment, *Fox v. LimeWire LLC*, No. 12-00818 (S.D.N.Y. Oct. 8, 2012), (D.E. 21, 25). Plaintiffs' only evidence in support of direct infringement comes from the Declarations of two technology company employees who purportedly monitored LimeWire at some point and denoted "hash" tags representing alleged infringements of Plaintiffs' works. Connelly Decl. at ¶¶ 5-7, Ex. B; Hill Decl. at ¶¶ 8-11, Exs. C-F. Putting aside the obvious infirmities in this evidentiary showing, and the questionable reliability of these individuals' untested and unverified findings, Judge Wood specifically held that direct infringement *cannot be proved by a hash-based analysis alone*. *See Arista*, 784 F. Supp.2d at 423 n. 21. Thus, "[w]hether the existence or the extent of digital file-sharing can conclusively be determined from the fact that two files have the same hash are questions for the trier of fact" and not appropriate for summary judgment. *Id.* Moreover, even if the files identified by Plaintiffs were available on LimeWire (and Plaintiffs have not provided sufficient proof that they were), this says nothing about whether any files were actually downloaded or whether the LimeWire software could have downloaded the file were a download attempted.

considered in *Arista* were not the same as those here, principles of *stare decisis* merit holding

Defendants liable at this stage because the facts of the two cases are the same.  The logical

inconsistency in Plaintiffs' position is apparent.

    "[S]tare decisis is concerned with rules of law." *In re.Tug. Helen B. Moran Inc.,* 607 F.2d

1029, 1031 (2d. Cir. 1979) (citation omitted).  Thus, varied fact patterns do "not lend

[themselves] to strict application of the rule of stare decisis." *Taylor Wine Co., Inc. v. Bully Hill

Vineyards, Inc.,* 569 F.2d 731, 734-35 (2d Cir. 1978).  Indeed, a decision "depending on the

facts is not controlling precedent as to a subsequent determination of the same question on

different facts and a different record." *In re. Tug Helen B. Moran,* 607 F.2d at 1031 (citation

omitted).  Therefore, and because "cases involving copyright infringement … are highly fact

dependent," *Abilene Music,* 320 F.Supp. 2d at 88, and issues of subjective intent are generally

inappropriate to be ruled on as a matter of law, *see R.F.M.A.S., Inc. v. Mimi So,* 619 F.Supp.2d

39, 85 (S.D.N.Y. 2009), the fact and time-specific inducement inquiry in this case must be

determined by the trier of fact.

    Even the one case cited by Plaintiffs for application of *stare decisis* makes this clear.

Notably, defendant in that case did *not* argue that the facts in the two actions were different.  *See

Associated Imports, Inc. v. Int'l Longshoremen's Assoc.,* 609 F. Supp. 595, 596-97 (S.D.N.Y.

1985).  The language quoted by Plaintiffs makes clear that the court relied on this fact in its

decision to apply *stare decisis:*

> [Plaintiff] has presented *uncontradicted* evidence that the boycott which affected
> it was the *same boycott* that affected the plaintiff in [the prior action].  Defendant
> has not suggested that the boycott did not exist or that it did not affect [Plaintiffs].
> *Nor has it suggested any facts which might differentiate this case from [the prior
> action].*

*Assoc. Imports*, 609 F. Supp. at 597 (emphasis added).  Here, unlike *Assoc. Imports*, Defendants'

have vigorously opposed the application of collateral estoppel because significant factual

differences exist between this case and *Arista* and Defendants' purposeful conduct (from 2003-

2006) considered in *Arista* is *not* the same as the purposeful conduct (from 2009-2010) relevant

here.  Thus, there remain questions of material fact in dispute making stare decisis inapplicable.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny summary

judgment on the issue of their liability for inducement of copyright infringement under Count 1

of Plaintiffs' complaint.

Dated: New York, New York
        November 12, 2012

Respectfully Submitted,

Richard J. Holwell
Michael S. Shuster
Avi Israeli
HOLWELL SHUSTER
& GOLDBERG LLP
335 Madison Avenue, 9th Floor
New York, NY  10017
Phone:  (646) 837-5151

*Attorneys for Defendants*