# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

TWENTIETH CENTURY FOX FILM
CORPORATION, VIACOM
INTERNATIONAL INC., COMEDY
PARTNERS, DISNEY ENTERPRISES,
INC., PARAMOUNT PICTURES
CORPORATION, and WARNER BROS.
ENTERTAINMENT, INC.
                    *Plaintiffs*,

        v.

LIME WIRE LLC, LIME GROUP LLC,
and MARK GORTON
                    *Defendants*.

**No. 12-CIV-0818**

---

## PLAINTIFFS' REPLY MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Steven B. Fabrizio
(Bar No. SF-8639)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Telephone:  (202) 639-6040
Facsimile:  (202) 661-4823

Gianni P. Servodidio
(Bar No. GS-0713)
JENNER & BLOCK LLP
919 Third Avenue
37th Floor
New York, NY 10022
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699

*Attorneys for Plaintiffs*

November 21, 2012

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

A. The *Arista* Court Conclusively Found that the LW Defendants Induced Their Users'
Direct Infringement Through 2009-10, the Time Period in this Case ......................................1

B. *Grokster* Expressly Rejects the LW Defendants' "Specific Intent" Argument ......................4

C. Plaintiffs Could Not Have "Easily" Joined the *Arista* Case ........................................6

D. There Is No Triable Issue of Fact as to Direct Infringement of Plaintiffs' Works By
Limewire Users ....................................................................................................8

CONCLUSION ..............................................................................................................11

# TABLE OF AUTHORITIES

**CASES**

*Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398 (S.D.N.Y. 2011) ................ passim

*Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124 (S.D.N.Y. 2009).........................10

*Columbia Pictures Industries, Inc. v. Fung*, No. 06-cv-5578, 2009 WL 6355911
    (C.D. Cal. 2009)................................................................................................5, 6, 8, 9

*Columbia Pictures, Inc. v. Bunnell,* No. 06-cv-01093,
    2007 WL 4877701 (C.D. Cal. 2007).......................................................................8

*DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293 (Fed. Cir. 2006)...........................5

*General Dynamics Corp. v. American Telephone & Telegraph Co.,*
    650 F. Supp. 1274 (N.D. Ill. 1986) .......................................................................7

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ...........................10

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) ............................2, 5

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 259 F. Supp. 2d 1029
    (C.D. Cal. 2003)…...............................................................................................10

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966
    (C.D. Cal. 2006)…...............................................................................................4, 5

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd,* 518 F. Supp. 2d 1197
    (C.D. Cal. 2007)..................................................................................................4

*Nations v. Sun Oil Co. (Delaware),* 695 F.2d 933 (5th Cir. 1983)..............................6, 8

*Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979)…...........................................6

*Ross-Berger Cos., Inc. v. Equitable Life Assurance Soc'y of the United States*,
    872 F.2d 1331 (7th Cir. 1989) ..............................................................................7

*Wing Shing Products (BVI) Ltd. v. Simatelex Manufacturing Co.*,
    479 F. Supp. 2d 388 (S.D.N.Y. 2007)...................................................................5

**OTHER AUTHORITIES**

*Arista Records LLC v. Lime Group LLC*, No. 06-cv-5936, ECF 42
    (S.D.N.Y. Aug. 16, 2007) ....................................................................................8

Order, Docket # 27, *Razor & Tie Direct, LLC v. Lime Group LLC*,
    08 Civ. 8600 (GEL) (Jul. 29, 2009 S.D.N.Y.) ....................................................8

Defendants Limewire LLC, LimeGroup LLC and Mark Gorton (collectively "the LW Defendants") had their day (in fact, years) in court.  They left no stone unturned.  Yet, after countless millions of dollars spent on litigation, on the operative legal issue governing this motion – their liability for inducement of copyright infringement under *Grokster* – the LW Defendants could not even demonstrate that there was a triable issue of fact.  Under longstanding principles of collateral estoppel, the LW Defendants cannot simply declare a "do over" and relitigate Judge Wood's finding from *Arista*.

The LW Defendants make four arguments against the application of collateral estoppel.  They argue that the time periods at issue in the two cases are different.  They argue that the liability finding in *Arista* should be limited to music copyrights.  They argue that plaintiffs should have joined the *Arista* action.  And they argue that there are triable issues of fact as to whether Limewire users directly infringed plaintiffs' copyrighted works.  Not one of those arguments can withstand scrutiny.

### A.  The *Arista* Court Conclusively Found that the LW Defendants Induced Their Users' Direct Infringement Through 2009-10, the Time Period in this Case.

As set forth in plaintiffs' opening memorandum ("MSJ") at 22-24, the *Arista* court granted summary judgment against the LW Defendants in May 2010 based on direct infringement by Limewire users of thirty copyrighted works.  *Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398, 411 & n.7 (S.D.N.Y. 2011).  In a second summary judgment decision in April 2011 – completely ignored by the LW Defendants in their opposition – Judge Wood found the LW Defendants secondarily liable for their users' direct infringement of thousands of additional copyrighted works.  Servodidio Decl. Ex. 1 (April 2011 Decision).

As presented in plaintiffs' opening memorandum – and not disputed by the LW Defendants – ***nearly all*** of the thousands of acts of direct infringement for which the LW

1

Defendants were held secondarily liable (almost 90%) took place in 2009 and 2010.  MSJ at 22-24.  In order to have imposed liability on the LW Defendants for their users' direct infringement in 2009 and 2010, the *Arista* court necessarily determined as a matter of law that the LW Defendants were responsible for inducing infringement under *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) ("*Grokster III*"), **in that 2009-2010 time period**. Absent such a finding, the LW Defendants simply could not have been found liable for their users' acts of direct infringement occurring in 2009 and 2010.  This was not some trivial matter: the Court's April 2011 summary judgment Order exposed each of the LW Defendants (including Gorton personally) to hundreds of millions of dollars in damages based almost entirely on the inducement of direct infringement by Limewire users occurring in 2009 and 2010.

Just as in *Arista*, the acts of direct infringement by Limewire users for which plaintiffs in this case seek to hold the LW Defendants secondarily liable took place in the same 2009 and 2010 time period.  Thus, for purposes of collateral estoppel, the time periods in this case and *Arista* are identical.  The LW Defendants' contention that the two cases involve different time periods is just wrong as a matter of indisputable fact.  And their failure even to address the completely overlapping time period, or the *Arista* court's April 2011 Order, speaks volumes.[1]

The LW Defendants' repeated contention that they "changed" their conduct before 2009 and 2010 is thus immaterial to the present motion.  Judge Wood already determined that the LW Defendants were secondarily liable for their users' direct infringement in 2009 and 2010, and

---

[1] The LW Defendants' authorities denying collateral estoppel, Opp. at 15 & n.8, are inapposite. They merely stand for the uncontroversial proposition that collateral estoppel should not apply where a second litigation seeks to hold a defendant liable for different acts from those which occurred during the time period at issue in the first litigation.  Here, by contrast, plaintiffs seek to hold the LW Defendants liable for the same misconduct for which the LW Defendants were held liable in *Arista*.

collateral estoppel should attach.  The LW Defendants litigated and lost this very issue, including with respect to the personal liability of Gorton.[2]

The failure to apply collateral estoppel in this case could (theoretically) lead to inconsistent decisions on the identical issue – the LW Defendants' inducement liability for their users' direct infringement of copyrights ***in the 2009 and 2010 timeframe***.  That is precisely what the doctrine of collateral estoppel seeks to avoid.[3]  At a minimum, relitigating the LW Defendants' liability would be antithetical to a central purpose of collateral estoppel, which is to foreclose the endless relitigation of issues that have been decided against a party that had a full and fair opportunity to be heard.  *See* MSJ at 15.

While the overlapping time periods at issue in this case and *Arista* are dispositive, even if the time periods were not fully overlapping, the LW Defendants could not defeat the application of collateral estoppel by claiming they stopped actively promoting infringement during later periods of time.  This is so because, during all time periods at issue, the LW Defendants continued distributing the Limewire software.  Under such circumstances, the ongoing act of distribution itself gives rise to liability.  As the Court in *Grokster* observed:

> For a party to be liable for inducement, distribution may begin prior to any promotion of infringement, distribution and promotion can occur at the same time, and most critically, ***distribution can follow past promotion***.  This highlighted portion of the above sentence is crucial. . . .  As a matter of common sense, a successful inducer will sometimes have no need to repeat the infringing

---

[2] Indeed, Judge Wood considered and rejected the argument that Gorton supposedly stepped down as CEO of Limewire in her initial summary judgment ruling in May 2010.  *Arista*, 784 F. Supp. 2d at 438-39.  The Court similarly considered and rejected the LW Defendants' arguments that they "changed" their conduct by adding filtering and warnings to users.  *Id.* at 429-30.

[3] Of course, a different ultimate outcome is hardly realistic as a practical matter, as this Court would be presented with the same record presented to Judge Wood.  As Judge Wood correctly ruled in *Arista*, all pre-statute of limitations evidence of the LW Defendants' misconduct and unlawful intent is probative and admissible to show the LW Defendants' intent to foster infringement.  784 F. Supp. 2d at 418.

3

> message *ad infinitum*. . . .  At a certain point the inducer can simply continue to distribute the product without any additional active encouragement, recognizing that the marketplace will respond in turn. . . .   Thus, once the market has internalized the inducer's promotion of infringement, the resulting infringements should be attributable to that defendant even though he/she no longer chooses to actively promote that message.

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd,* 518 F. Supp. 2d 1197, 1233-34 (C.D. Cal. 2007) (emphasis in original) ("*Grokster V*"); *see also id.* at 1235 (software "remains inexorably linked to its historical efforts to promote infringement.  The bell simply cannot be unrung.").

This reasoning applies with even greater force here.  Even ***after*** Judge Wood held that their distribution of the Limewire software constituted willful copyright infringement in May 2010, the LW Defendants refused to discontinue distributing Limewire.  Their current excuse for that conduct – that they deliberately allowed massive ongoing infringement of plaintiffs' movies and television shows to further their efforts to secure a lucrative deal with certain record companies – is not a defense; it is an indictment.

**B.  *Grokster* Expressly Rejects the LW Defendants' "Specific Intent" Argument.**

In their opposition, the LW Defendants argue that the test for inducement liability under *Grokster* is "content specific," requiring plaintiffs to demonstrate "that Defendants had the 'specific intent' to induce the underlying acts of direct infringement."  Opp. at 18.  However, *Grokster* squarely rejected this very "specific intent" argument:

> Liability may attach even if the defendant does not induce specific acts of infringement . . . Plaintiffs need not prove that [defendant] undertook specific actions, beyond product distribution, that caused specific acts of infringement. Instead, ***Plaintiffs need prove only that [defendant] distributed the product with the intent to encourage infringement***.

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*, 454 F. Supp. 2d 966, 984, 985 (C.D. Cal. 2006) ("*Grokster IV*"); *see also Grokster III*, 545 U.S. at 940 n.13 (same); *Columbia Pictures*

*Indus., Inc. v. Fung*, No. 06-cv-5578, 2009 WL 6355911, *10 (C.D. Cal. 2009) ("Importantly, liability may attach even if the defendant does not induce specific acts of infringement.").[4]

The LW Defendants' "specific intent" argument simply cannot be squared with *Grokster* itself.  The software at issue in *Grokster* enabled users to infringe any type of content, but it was overwhelmingly used for infringement of music.  Virtually all of the evidence cited by the Supreme Court and on remand reflected the *Grokster* defendants' intent to foster music infringement.  *Grokster III*, 545 U.S. at 925-26; *Grokster IV*, 454 F. Supp. 2d at 987-88.  But that fact was immaterial to the Supreme Court and on remand.  The plaintiffs in *Grokster* included both record companies and movie studios – and the *Grokster* defendants were found equally liable for inducing infringement of both music and movies.  Nowhere did the Supreme Court find that the *Grokster* defendants had a specific intent to induce video infringement.  Nor did the Court ever suggest that such a finding was required, or even relevant.

The LW Defendants' "specific intent" argument likewise cannot be squared with *Arista*, where Judge Wood repeatedly found that the LW Defendants fostered ***copyright infringement***.  The *Arista* court did not limit its ultimate findings to any "specific" type of content.  *E.g., Arista*, 784 F. Supp. 2d at 426 ("The evidence before the Court establishes that LW is liable for inducement of *copyright infringement*.") (emphasis added); *id.* ("there is overwhelming evidence

---

[4] The two cases cited by the LW Defendants do not suggest otherwise.  *DSU Medical Corp. v. JMS Co., Ltd.*, Opp. at 18, recognizes the uncontroversial (but very different) proposition that a plaintiff must separately prove that direct infringement occurred.  474 F.3d 1293, 1303 (Fed. Cir. 2006).  *DSU*, however, does not even purport to require a showing that the defendant intended to induce the specific underlying act of direct infringement that gave rise to secondary liability.  *Wing Shing Products (BVI) Ltd. v. Simatelex Manuf. Co.*, 471 F. Supp. 2d 388, 408 (S.D.N.Y. 2007), Opp. at 18, stands for the same point, and in fact supports plaintiffs' view.  *Wing Shing* observes that "Courts have interpreted acts of inducement exceedingly broadly" and further makes clear that "the intent element is satisfied by a showing that defendant knew or should have known his actions would induce actual infringements."  *Id.* at 408 (quotation marks omitted), 410-11.  This is precisely the issue that Judge Wood has already resolved in *Arista*.

that LW engaged in purposeful conduct that fostered *infringement*" (emphasis added); *id.* at 424 (similar).[5]

### C.  Plaintiffs Could Not Have "Easily" Joined the *Arista* Case.

One factor that courts examine in assessing the impact of applying collateral estoppel is whether the plaintiffs "could easily have joined in the earlier action."  *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979).  Of course, the question of whether a plaintiff could have "easily" joined an earlier action does not turn on the technical permissibility of joinder; otherwise, application of collateral estoppel would be co-extensive with the Federal Rules of Civil Procedure regarding joinder.  Even when it is shown that a later plaintiff could have "easily" joined an earlier action, courts disallow collateral estoppel only when the failure to join has materially prejudiced the defendant.  *Nations v. Sun Oil Co. (Delaware),* 695 F.2d 933, 938 (5th Cir. 1983), *cert. denied,* 464 U.S. 893 (1983).  Here, the LW Defendants cannot make either showing.  The evidence in the record, which is undisputed, demonstrates that the numerous plaintiffs' counterclaims and state law claims in *Arista* were significant impediments to joining the case.  Indeed, by their conduct, the LW Defendants manifested that they too believed that joinder would have been impractical – and expressed a preference to allow the *Arista* case to control the issue of their liability.

Plaintiffs would have been confronted with substantial practical to joining the *Arista* case.  First, the LW defendants filed **eight counterclaims** against the *Arista* plaintiffs, including

---

[5] Although immaterial to the instant motion, the LW Defendants cannot – and do not even try – to dispute that they in fact targeted video infringement as well as music infringement.  The LW Defendants added "BitTorrent" functionality to the Limewire software in 2006; BitTorrent was optimized for *video* content and was infamous as a haven for infringement of movie and television content.  *See Fung*, 2009 WL 6355911, *2-3.  The LW Defendants even designed a special feature to permit users to search for video files by MPAA (Motion Picture Association of America) ratings, such as PG or R.  *See* Irdeto Decl. Ex. B.

6

for antitrust violations.  *See* Restated First Amendment Counterclaims, *Arista Records LLC v. Lime Group LLC*, No. 06-cv-5936, ECF 42 (S.D.N.Y. Aug. 16, 2007).  While those counterclaims ultimately were dismissed (more than a year later), plaintiffs could not have "easily" intervened in that case without embroiling themselves and their claims in significant antitrust counterclaims.  *See Ross-Berger Cos., Inc. v. Equitable Life Assurance Soc'y of the U.S.*, 872 F.2d 1331, 1337 (7th Cir. 1989) (offensive collateral estoppel applied; plaintiffs' decision not to join prior litigation reasonably explained by the presence of counterclaims in the earlier proceeding).  The *Arista* action also involved state law causes of action that were wholly inapplicable to plaintiffs' copyrighted works, and which required complex proof of actual damages (as opposed to the streamlined statutory damages applicable to works protected under federal copyright laws).  *Arista,* 784 F. Supp. 2d at 436 (discussing common law claims).  Finally, the *Arista* case already involved thirteen plaintiffs.  The added complexity and delay arising from joining several more plaintiffs made joinder impracticable.  *E.g., General Dynamics Corp. v. American Tel. & Tel. Co.,* 650 F. Supp. 1274, 1282 n.7 (N.D. Ill. 1986) (refusing to deny estoppel because, although plaintiffs technically could have joined in the prior litigation, "such joinder could not have occurred with 'ease'").

The impracticality of adding plaintiffs to *Arista* is evidenced by the fact that Judge Lynch denied a request by two independent record companies to consolidate their separate action against the LW Defendants with the *Arista* case.  Order, Docket # 27, *Razor & Tie Direct, LLC v. Lime Group LLC*, 08 Civ. 8600 (GEL) (July 29, 2009 S.D.N.Y.).  It is also evidenced by the LW Defendants' contractual "standstill" agreement with another plaintiff, an independent record company association; in that agreement, the LW Defendants agreed to apply the outcome in *Arista* to the plaintiff's members in exchange for the plaintiff staying its litigation pending the outcome in *Arista*.  Servodidio Decl. Ex. 8.

7

The LW Defendants' argument fails for a second reason:  The failure to join in an earlier case will not prevent application of collateral estoppel absent a showing that the plaintiff's delay in bringing suit was purposeful and fundamentally unfair to the defendant.  *See Nations,* 695 F.2d at 938 (plaintiff in second action had not "sand-bagged" defendant by failing to join earlier action where there was no proof of "purposeful delay" and the failure to join was not "fundamentally unfair" to the defendant).

Here, the LW Defendants do not even purport to argue – or present any evidence – that they were prejudiced in any way as a result of plaintiffs not joining the *Arista* case.  Nor could they.  That alone is dispositive of their argument as to joinder.[6]

### D.  There Is No Triable Issue of Fact as to Direct Infringement of Plaintiffs' Works by Limewire Users.

In support of plaintiffs' motion for summary judgment, plaintiffs presented clear-cut evidence that that Limewire users directly infringed plaintiffs' copyrighted works.  MSJ at 12; SUF ¶ 4.  As described in their declarations, plaintiffs' investigators: (i) searched for infringing copies of plaintiffs' works on Limewire-accessible networks; (ii) actually downloaded copies of each file, manually verifying that each file was in fact an infringing copy of plaintiffs' copyrighted work; (iii) recorded the unique identifier of each file, known as a "hash," which is unique to a specific file and digitally identical copies of that file; and (iv) used that information to identify *millions* of Limewire users actively engaged in the infringing distribution of those files.  SUF ¶ 4; Irdeto Decl. ¶¶ 8-11 & Ex. C; Peer Media Decl. at ¶¶ 4-7.

--------------------------------------------------

[6] The LW Defendants' suggestion that plaintiffs did nothing to enforce their rights during the past decade is nonsensical.  For the past decade, plaintiffs have been engaged in constant high-profile litigation, and other enforcement efforts, to protect their copyrighted content, and have obtained substantial judgments against infringers similar to the LW Defendants.  *See, e.g*., *Fung*, 2009 WL 6355911; *Columbia Pictures, Inc. v. Bunnell*, No.  06-cv-01093, 2007 WL 4877701 (C.D. Cal. 2007).  The LW Defendants had every reason to expect that other copyright owners would bring suit against them for their misconduct.

Tellingly, the LW Defendants do not dispute the accuracy or integrity of this evidence. Nor do they question the expertise of those who collected it.  Instead, the LW Defendants observe that one step of plaintiffs' investigators' process involved the use of "hashes" – the rough equivalent of a computer file's genetic fingerprint – and make the ***assumption*** that plaintiffs' direct infringement evidence must therefore be the same "hash-based analysis" used by the *Arista* plaintiffs, which Judge Wood found not conclusive at the summary judgment stage. *See* Opp. at 23 & nn.17-18.  But that assumption is just incorrect.

The analysis used by plaintiffs here has no resemblance to the analysis used by the *Arista* plaintiffs.  Plaintiffs here present ***direct*** evidence of direct infringement.  The *Arista* plaintiffs attempted to deduce direct infringement from the fact that two different users had copies of files with identical hashes.  784 F. Supp. 2d at 420 n.21.  The *Arista* plaintiffs' argument was that if two Limewire users had files with the same hash, then one user must have downloaded it from the other (or from another user on the network), thus proving that the file had been distributed in violation of the Copyright Act.  Faced with conflicting expert reports as to the content and availability of those files, however, Judge Wood concluded that a triable issue of fact existed as to the accuracy of that claim.  But there was no dispute – by either Judge Wood or Limewire itself – that the existence of files with matching hashes established that those files were digitally identical copies of each other.  *Id.*  In contrast, here, plaintiffs' investigators joined BitTorrent "swarms" and thus confirmed that Limewire users were actually distributing plaintiffs' copyrighted works (using Limewire).  *See Fung*, 2009 WL 6355911, *2 (explaining the operation of BitTorrent "swarms").  The LW Defendants just misconstrue plaintiffs' evidence.[7]

_____

[7] The LW Defendants' argument as to direct infringement of a handful of works submitted with plaintiffs' summary judgment motion is also misplaced.  At trial, plaintiffs will prove direct infringement as to over 2,000 copyrighted works.  The LW Defendants will have every

There is a more fundamental reason the LW Defendants' argument cannot create a triable issue of fact to defeat summary judgment:  The LW Defendants failed to present any actual evidence controverting plaintiffs' evidence.  Once plaintiffs' identified through forensic evidence that millions of LW users distributed copies of plaintiffs' infringing works, they established direct infringement.  *See Arista Records*, 784 F. Supp. 2d at 419-20; *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 131 (S.D.N.Y. 2009); *Fung*, 2009 WL 6355911, *4.  To defeat summary judgment, the LW Defendants were obliged to come forward with ***actual evidence*** to controvert the fact of direct infringement.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (defendants "must do more than simply show there is some metaphysical doubt as to the material facts.  In the language of the rule, they must come forward with specific facts showing that there is a genuine issue for trial.").  But the LW Defendants' opposition is devoid of any contrary evidence on this issue – in the form of expert testimony or otherwise.  Thus, the LW Defendants fail to establish even "metaphysical doubt."

---

opportunity to test plaintiffs' evidence of direct infringement in that context.  This Court plainly can decide in this motion that collateral estoppel applies to establish the LW Defendants' *Grokster* inducement liability, even if direct infringement is left to be decided at trial.  *See, e.g., Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 259 F. Supp. 2d 1029, 1034 (C.D. Cal. 2003) (finding that publisher plaintiffs' absence of proof as to direct infringement did not prevent the court from deciding a summary judgment motion to establish defendants' liability for secondary infringement), *rev'd on other* grounds, *Grokster III*, 545 U.S. 913.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant summary judgment against the LW Defendants on the issue of their liability for inducement of copyright infringement under Count 1 of Plaintiffs' Complaint.

Dated:   November  21, 2012

Respectfully submitted,

By:     /s/ Steven B. Fabrizio_____
        Steven B. Fabrizio (Bar No. SF-8639)
        JENNER & BLOCK LLP
        1099 New York Avenue, NW
        Suite 900
        Washington, DC 20001
        Telephone:  (202) 639-6040
        Facsimile:  (202) 661-4823


        - and -

        Gianni P. Servodidio (Bar No. GS-0713)
        JENNER & BLOCK LLP
        919 Third Avenue
        37th Floor
        New York, NY 10022
        Telephone:  (212) 891-1600
        Facsimile:  (212) 891-1699

        *Attorneys for Plaintiffs*